```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF TEXAS
                      DALLAS DIVISION

UNITED STATES OF AMERICA, )
                          )
          Plaintiff,      )
                          )
vs.                       )  3:12-CR-00234-B
                          )
QUAYLAN ANDERSON,         )
                          )
          Defendant.      )
```

```
                 SENTENCING HEARING
         BEFORE THE HONORABLE JANE J. BOYLE
            UNITED STATES DISTRICT JUDGE
                   JULY 25, 2013
```

```
               A P P E A R A N C E S
For the Government:

     UNITED STATES ATTORNEY'S OFFICE
     1100 Commerce Street - 3rd Floor
     Dallas, TX  75242
     (214)659-8600
     BY:  LISA J. MILLER

For the Defendant:

     FEDERAL PUBLIC DEFENDER'S OFFICE
     525 Griffin Street - Suite 629
     Dallas, TX  75202
     (214)767-2746
     BY:  CARLTON C. McLARTY


COURT REPORTER:  SHAWNIE ARCHULETA, TX CCR No. 7533
                 1100 Commerce Street
                 Dallas, Texas 75242

proceedings reported by mechanical stenography,
transcript produced by computer.
```

```
 1                    (In open court at 1:50 p.m.)
 2              THE COURT:  Next case up is Quaylan
 3    Anderson, 3:12-CR-234.  For the government?
 4              MS. MILLER:  Lisa Miller for the
 5    government, Your Honor.
 6              MR. McLARTY:  Carlton McLarty for
 7    Mr. Anderson.
 8              THE COURT:  Good afternoon, Mr. Anderson.
 9              THE DEFENDANT:  Good afternoon.
10              THE COURT:  As you know, you are here for
11    the sentencing in your case today.  Before we get
12    started, I want to go through the papers that have
13    been filed in connection with this and what I have
14    reviewed and relied upon, so I will be asking you
15    questions about that.
16              Before we get started, I'm going to place
17    you under oath.  So raise your right hand, please.
18              (The Defendant was sworn.)
19              THE DEFENDANT:  I do.
20              THE COURT:  Okay.  Mr. Anderson, have you
21    had a chance to review thoroughly the presentence
22    report in this case with Mr. McLarty?
23              THE DEFENDANT:  Yes, ma'am.
24              THE COURT:  Okay.  And you have had a
25    chance to do that before today.
```

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  All right.  Mr. McLarty filed

3   some objections to the presentence report with

4   regard to your criminal history category, primarily,

5   but also a couple of other issues.  Have you had a

6   chance to review those with him?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  Okay.  There was an addendum

9   filed to the presentence report; in other words, a

10   supplement based upon Mr. McLarty's objections.

11   Have you had a chance to review that with him?

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  Okay.  I also have a

14   sentencing memorandum, as well as what has been

15   described as supplemental sentencing material,

16   Documents 54 and 55 in the docket respectively,

17   filed on your behalf by Mr. McLarty.  Have you had a

18   chance to review those with him, as well?

19          THE DEFENDANT:  Yes, ma'am.

20          THE COURT:  Okay.  Any questions about any

21   of these materials?

22          THE DEFENDANT:  No, ma'am.

23          THE COURT:  Mr. Anderson, you were in here

24   a while ago for a pretty lengthy hearing in this

25   case, so I know you have been in court and have had

1  a chance to familiarize yourself with the charges

2  and whatnot.  But I want to make sure, as you stand

3  here today, you're telling me you have had a full

4  chance to review everything and to prepare with

5  Mr. McLarty for this sentencing hearing.

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  Let's go ahead, then, if there

8  is nothing else on the paperwork the Court is

9  presented with to review, let's talk about your

10  objections.

11          Mr. McLarty.

12          MR. McLARTY:  Thank you, Your Honor.  Your

13  Honor, let me go first to the -- my objection number

14  three, school records.  I was provided today with a

15  copy of his diploma.  I would just submit that to

16  the Court.  We would like a ruling on that.  And the

17  reason -- it seems like a minor point, but when a

18  person doesn't have -- is found not to have a GED in

19  the Bureau of Prisons, they try to put them in the

20  GED program.  And Quaylan is really beyond that, and

21  he wants to get into other programs.  So we want the

22  record to reflect that he actually does have his

23  high school diploma.

24          THE COURT:  Has the government had a

25  chance to see the diploma?

1          MS. MILLER:  Yes, Your Honor.

2          THE COURT:  And probation?

3          PROBATION OFFICER MS. MORRIS:  Yes, Your

4  Honor.

5          THE COURT:  Any dispute about the --

6          MS. MILLER:  No.

7          THE COURT:  Okay.  All right.  Then I

8  would sustain that objection and find, in fact, that

9  it has now been clarified that he did graduate from

10  high school.  And what high school was that?

11          MR. McLARTY:  This was the Texans Can

12  Academy at Paul Quinn College with the -- they

13  awarded this high school diploma by order of the

14  State Board of Education, June 11, 2007.

15          THE COURT:  All right.  Thank you.  Let's

16  move back to your objections.

17          MR. McLARTY:  Your Honor, the objection

18  goes to the criminal history calculation.  I would

19  argue that the Probation Department, in their

20  addendum, reduced it by one point.  So I think we're

21  at -- we've got -- according to the addendum, there

22  are 13 points.  I think there ought to be another

23  point or two taken off.

24          THE COURT:  Before we get into that, let's

25  just make sure that we are clear on the paragraphs

1    that you are referring to.  You're okay with the

2    Probation Department's resolution of 40 and 42,

3    which basically has him with two points on paragraph

4    40 and striking it down from two to one point on

5    paragraph 42.  Is that right?

6              MR. McLARTY:  Well, they took it down to

7    one point on paragraph 42.  I wouldn't disagree with

8    that.

9              THE COURT:  Okay.  And then we are talking

10   about paragraph 44.

11             MR. McLARTY:  44.

12             THE COURT:  And I think we do need to hear

13   a little bit more detail about that.  This has to do

14   with a deferred adjudication, a probated sentence

15   that he received in what appears to be in a

16   different time frame that was possibly thereafter

17   revoked on a similar time frame as prior to.

18             And as I understand it from just looking

19   at the presentence report -- and we need to get this

20   clarified -- is that when he got his deferred

21   adjudication probation, the eight years in the

22   paragraph 44 aggravated assault case, that he was

23   subjected to SAFPF for 12 months.  Thereafter is

24   when the revocation occurred, after he got out of

25   SAFPF, and that's what I need to have clarified.  Go

1    ahead.

2              MR. McLARTY:  Well, I don't think he's

3    ever been -- the commonality in -- my understanding

4    of the time frame is, in essence, he was on three

5    deferred adjudications, and there is a commonality

6    on the placement into SAFPF.

7              If you look at each and every -- the

8    factual rendition on each one, in paragraph 44, as a

9    condition of probation, this is the last paragraph

10   of the -- the next-to-the-last paragraph on the

11   factual summary of the aggravated assault conviction

12   in paragraph 44.  As a condition of probation,

13   ordered into confinement and treatment of not less

14   than 90 days or more than 12 months in SAFPF.  The

15   records reflect that he entered SAFPF on October 13,

16   2010.

17             If you look at the factual rendition on

18   paragraph 42, again, we have the October 13th --

19   next-to-the-last paragraph, October 13th, 2010,

20   placement into SAFPF.  And then we look at the very

21   first case where he's on deferred adjudication, and

22   we see again the October 13th, 2010, placement to

23   SAFPF.

24             THE COURT:  October 13th, 2010, in

25   paragraph 40?  Are you sure about that?

1          MR. McLARTY:  In paragraph -- well --

2   well, he had two, but he definitely did have yet

3   another one on -- in the very next paragraph it does

4   reference yet another SAFPF placement.  And that's

5   in the next-to-the-last paragraph on the paragraph

6   regarding criminal history number 40.

7          So it seems like one trip to SAFPF is

8   elevating his criminal history by three points.  And

9   I don't know that he ought to be getting three

10  points for each one.  I really have never had

11  this -- I don't think the exact -- I couldn't find a

12  case with the exact same circumstances, because I

13  think this is pretty unusual to get three deferred

14  adjudications running at the same time.

15         THE COURT:  I think the question I have is

16  that in 40, the offense was September the 25th of

17  '06.  He got the ten years deferred adjudication on

18  that date.  Moving then to 41, for an offense of

19  November 15th of '07, on that same date as paragraph

20  40, the '06 offense, he was given ten years deferred

21  adjudication.  And he was also sentenced in January

22  of 2010 to confinement for 90 days.  In the

23  paragraph 40 case, the same date in January 2010, he

24  was sentenced to 90 days confinement.

25         In the 44 case, it's a 2010 case, and it

1   shows him getting deferred adjudication

2   August 19th of 2010, which is different from the

3   previous dates and then a violator's warrant coming

4   out for him in 2011.

5          I don't see the commonality.  I guess what

6   I am saying is, I don't see that this third came

7   from the presentence report suggests that he was

8   looking at SAFPF and confinement therefore on the

9   same date.  It looks more like he got the 90 days

10  SAFPF at the time he got the deferred -- eight years

11  deferred on April the 27th.  And I want to hear from

12  both sides on this.  That's my confusion.  I don't

13  think it's clear.

14         MR. McLARTY:  Let's look -- looking

15  closely at paragraph 44, number 44, that's the

16  aggravated assault.  It's correct that on 8/19,

17  August 19, 2010, he was sentenced to eight years

18  deferred adjudication, probation.  On 7/14/2011, the

19  probation violation warrant was issued; that's still

20  pending.  So his probation has actually never been

21  revoked.

22         THE COURT:  The point is, if you went to a

23  boot camp type of facility as part and parcel of the

24  2010 sentencing, then I think the case authority

25  would support the points.

1       MR. McLARTY:  Well, I guess my point would
2  be that, in the discussion of the offense listed in
3  paragraph 44, we go down and find that as a
4  condition of his probation he was ordered into
5  SAFPF, and he entered the SAFPF on October 13th,
6  2010, which is the commonality with the other two
7  cases.
8       THE COURT:  I'm just not seeing the
9  October 2013 dates in the other two paragraphs.
10      MR. McLARTY:  Okay.  On paragraph -- on
11 criminal history in 42, I guess in the -- it's the
12 next-to-the-last paragraph in that factual summary
13 that begins August 19th, his conditions were again
14 modified.  And the quotation says that probation
15 records reflect that he entered SAFPF on
16 October 13th, 2010.
17      THE COURT:  It's a little confusing.  Let
18 me hear from the government, and then maybe
19 probation can shed some light on it.
20      Ms. Miller, do you have a position on
21 this?  And I will ask Mr. McLarty and Mr. Anderson
22 to step aside for a moment so we can get this
23 cleared up.
24      MS. MILLER:  Honestly, Your Honor, I'm not
25 sure how much more help or if I can be helpful at

1   all.  It was a little unclear to me initially.  But

2   I know from -- so I would defer certainly to the

3   probation office, because they are just really

4   strong in terms of the criminal history

5   calculations.

6          But I did read through the application

7   notes that were cited there, and it does seem to

8   make sense that in paragraphs 40 and 42 it seemed

9   that he was sentenced to confinement for 90 days on

10  each of those cases at the same time, as the Court

11  pointed out.

12         And then in paragraph 44, it appears that

13  it is a completely new offense, a completely new

14  sentence, and in that instance he was sentenced to

15  the -- to the SAFPF on October 13th.  Although, it

16  is correct what Mr. McLarty is saying, that there is

17  a mention of him having entered that facility in

18  paragraphs 40 and 42, but that is after the 90 days

19  that would have already been served back in January

20  of 2010.

21         So based on that, it appears to me that

22  the way that the probation office has calculated the

23  criminal history points and based on the application

24  notes in the guidelines that that's correct.

25         THE COURT:  Thank you.  Ms. Morris, did

1   you have anything on this?  I obviously know that

2   you, as usual, prepared a thorough report.  But your

3   position is, now that we have heard from both sides

4   on this --

5            MS. MILLER:  If I can say one other thing,

6   Your Honor.  It appears to me from the records there

7   have been two separate instances of confinement, one

8   that occurred sometime in January on paragraphs 40

9   and 42, and then another that occurred with respect

10  to the sentencing in paragraph 44.

11           THE COURT:  All right.

12           PROBATION OFFICER MS. MORRIS:  Well, Your

13  Honor, there is definitely -- I support the

14  addendum.  I went back through and took off the one

15  point.  We have, you know, several convictions.

16  There was, I think, two terms of treatment that come

17  through; that is the result.  Some as revocation

18  punishments and then -- or you know, as sanctions,

19  and then some as original sentences, which is why

20  they are countable more so than -- it's not

21  double-counting for the two revocations.  It is a

22  separate sentence -- it's part of the original

23  sentence in the original convictions.

24           THE COURT:  Paragraph 44, eight years

25  deferred came with it at that very time a, SAFPF

```
 1  confinement condition.
 2          PROBATION OFFICER MS. MORRIS:  Right.  So
 3  that was an original sentence as opposed to part of
 4  the revocation.
 5          THE COURT:  All right.  Mr. McLarty, if
 6  you and your client will come back up.  Let me take
 7  a look at this for a minute.  So with the points
 8  that everyone agrees has been given the defense back
 9  in this case, we have gone to a criminal history
10  category of 13; is that right?
11          MR. McLARTY:  Yes, Your Honor.
12          THE COURT:  And with your position, it
13  would be another two down.
14          MR. McLARTY:  At least another one down,
15  and that would make a difference.  A 12 would put
16  him in Category V rather than VI.
17          THE COURT:  I agree with what the
18  Probation Department has set out in their addendum,
19  and I think it is certainly more than plausible from
20  the discussion in the presentence report.
21          Having said that, I think that we don't
22  have the actual records.  And because we're looking
23  at a very high guideline range here anyway, I'm
24  going to go ahead and give you the one point
25  differential on that particular point just because
```

1    it's still a little bit confusing, although I do

2    think I would be justified to deny that request.

3              But again, without the specific records, I

4    don't see a reason to create another issue on

5    appeal.  So I will go ahead and grant the extra

6    point, which takes him to a 12 with a criminal

7    history category of V and takes the range from 235

8    to 293.  Everyone agree that that is the range with

9    that?

10             MS. MILLER:  Yes, Your Honor.

11             MR. McLARTY:  Let me double-check.

12             Yes, Your Honor.

13             THE COURT:  Okay.  What else did you have,

14   Mr. McLarty, by way of objections?

15             MR. McLARTY:  That would be all I had on

16   my objections, Your Honor.  I think we have covered

17   all -- I think the probation officer responded to my

18   other point, which was that the other case never was

19   filed.

20             THE COURT:  I have a question -- yes, it

21   was never filed.  I guess the question would be --

22   and the law is a little bit unclear on this with

23   regard to the aggravated robbery arrest.  I just

24   certainly don't plan on relying on that to depart or

25   vary above the top of the advisory guidelines.  But

1    I do want to make sure that I know what the position

2    is of the defense on that, that it wasn't pursued,

3    but it is your position that it's absolutely

4    incorrectly in here.  Is there incorrect

5    information?  Because there is some detail involved

6    in the presentence report that it looks like it

7    certainly at least was an arrest that occurred under

8    certain circumstances indicating aggravated robbery,

9    aggravated assault.

10             MR. McLARTY:  I don't have the records,

11   Your Honor, but --

12             THE COURT:  I'm sorry, 57.

13             MR. McLARTY:  -- my understanding -- well,

14   if I could have just a second.  I don't have the

15   record with me, but according to my investigator, it

16   was -- it didn't get through the grand jury.

17             THE COURT:  All right.  Let's move on,

18   then, to the rest of your argument.  The Court

19   adopts the presentence report and the addendum as

20   modified by the Court's ruling on the defense

21   objections.  And as I mentioned, we are then at an

22   offense level of 34 with a criminal history category

23   of V, 235 to 293 guideline range.  All right.

24             Mr. McLarty.

25             MR. McLARTY:  Thank you, Your Honor.  Your

1    Honor, at this time I would like to, with the

2    Court's permission, turn to the issue of my motion.

3    I think we have agreed to what the guidelines are.

4    I would like to turn to the issues presented by my

5    request for a departure variance.

6            Your Honor, I've got several family

7    members here.  Rather than speaking to the Court,

8    Ms. Anderson, Mamie Anderson, Quaylan's grandmother,

9    has written a letter.  She would like the letter to

10   stand in for her statement to the Court and

11   basically just speaking for the family.  And with

12   her permission, I would like to start off just by

13   reading her letter.

14           THE COURT:  That's fine, as long as you

15   have given Ms. Miller a chance to look at it.

16           MR. McLARTY:  Actually, I haven't.  I will

17   be glad to let her take a quick look at it.

18           And the letter is dated today, Your Honor.

19   And Ms. Anderson, Mamie, is here in court.  And the

20   letter is to the Honorable Judge Boyle, asking for

21   the mercy of the Court:  This is to inform you of

22   who Quaylan Anderson really is.  I, Mamie Anderson,

23   the grandmother of Quaylan Anderson, know him better

24   than anyone because I raised him from 11 months old,

25   along with his two siblings.  The oldest one at that

1   time was two, the baby was 3 months when I took them

2   in.

3           Their mother was on drugs at the time of

4   carrying them.  She is totally blind and paralyzed,

5   and she doesn't even know that she's in the world.

6   Their father was in the penitentiary.  But Quaylan

7   was getting ready to help him in his -- in his

8   business affairs.

9           Quaylan is a very loving person, not

10  because he is my grandson, but because that's who he

11  is, always trying to help someone, especially if he

12  felt they were in trouble.  He strived hard in

13  school to be successful, but with his condition,

14  MHMR, sometimes it was very stressful.

15          But he loved me, and with me showing him

16  love and encourage him, he insist -- he finished

17  high school with a lot of hard work in a few years

18  later due to his mental ability.

19          I still believe God can still be

20  successful -- I still believe to God that he can

21  still be successful.  I am asking you and the Court

22  to have mercy on him in his sentencing.  I yet

23  believe in God and know that God is a God of another

24  chance.

25          I pray that he can remain in Seagoville

1  because of my disability or at least nearby. We, as

2  his family, love him, and we want to correspond with

3  him as much as possible. If he is placed a long way

4  off, with me having knee replacement on both knees,

5  it will be very impossible. Respectfully, Mamie

6  Anderson.

7          And that, Your Honor, I would like to be

8  considered as the statement on behalf of the family.

9          THE COURT: Well, it will be considered.

10          MR. McLARTY: Thank you.

11          Your Honor, several points. Category V,

12  guideline range 235 to 293 months. I think I would

13  like to just start my remarks by asking the Court to

14  consider what is the heartland of a case like this?

15  What is the average? What is the norm? And I sent

16  you the article just to stress what I think the

17  heartland of these type of cases are.

18          This is a child pornography production

19  case. And my view of this kind of offense is --

20  is -- comes from several years of handling,

21  possession of child pornography cases,

22  transportation and distribution. It's one of the

23  more unpleasant aspects of the job, to have to go

24  out to the FBI lab or cart or wherever and look at

25  these heartbreaking images of these eight-year-olds

1    and three-year-olds.  And you do that and you

2    wonder, who is making that stuff?

3              And that -- that's the heartland of a

4    child pornography production case.  The people who

5    are taking the pictures of the eight-year-old

6    children and the three-year-old children and selling

7    them or distributing them or putting them on the

8    Internet for the whole world to watch.  This is not

9    that case.

10             You've got Quaylan Anderson, who the

11   probation officer describes him as borderline

12   intellectual functioning.  He's been in Special Ed

13   all of his life.

14             He meets this young woman and tells him,

15   hey, I'm 17; I'm running away.  At the time he

16   believed her.  When he and his friends found out,

17   well, she's really not that old, you know, they took

18   steps to take her back.

19             So this is not -- and then the pictures

20   themselves, they are obviously production quality

21   low.  It's, you know -- to me, it's, you know,

22   obviously illegal.  He knows it's illegal.  She's

23   certainly not old enough, even if she was 17; that's

24   illegal.  But it is so far away from the heartland

25   of these kind of cases and this kind of shocking and

1    heartbreaking stuff that we see and that we have to

2    go look at sometimes.  So I do think that he's

3    outside of the heartland there.

4              Just because of his background, he's

5    really not sophisticated in terms of knowing that --

6    you know, if he had any sense, he wouldn't have

7    messed around with a 17-year-old runaway anyway.

8              But anyway, he has accepted responsibility

9    and pled guilty before this Court.  And I do think

10   that, considering just what type of case this is,

11   what type of person he is, that under the 3553(e)

12   factors, that a sentence at the -- even at the low

13   end of the range, it's almost a 20-year sentence.

14             And I think -- I think, in this case, the

15   mandatory minimum sentence of 15 years is a harsh

16   and hard sentence.  Maybe all these deferred

17   adjudications didn't serve him well.  He's never

18   done any significant amount of time at all. . .

19   maybe if he had.  But you know, I suppose, because

20   of his intellectual history and so forth, that the

21   judges I guess gave him a bit of a break.  But I do

22   think that in this case your range is limited.  It

23   can't be any lower than 15.  So I would ask the

24   Court to consider departure in the case.

25             THE COURT:  Thank you, Mr. McLarty.

1              Mr. Anderson --

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  -- you have a right to speak

4    for yourself.  What would you like to say?

5              THE DEFENDANT:  What I have to say --

6    well, I do ask for your leniency in the case.  I

7    mean, like I say, I take full responsibility for not

8    being aware of my surroundings and more -- serving

9    my surroundings.  So even though I was deceived

10   about her age, I still blame myself on that part.

11             And I still have a lot of future goals and

12   plans and dreams to accomplish, so if -- if you do

13   decide to sentence me, to just leave me room so I

14   can maybe get out and make something of myself.

15   That's all I ask.

16             THE COURT:  Let me hear from the

17   government, and I will ask the two of you to stand

18   aside.

19             Make sure you are not texting in court.

20   Those machines are not allowed in here.

21             Ms. Miller.

22             MS. MILLER:  Thank you, Your Honor.  With

23   respect to -- with respect to this defendant's

24   motion for downward variance and this notion that

25   this case is somehow outside of the heartland of

1    cases, I could not more emphatically or strongly

2    disagree with that.

3            If you look at the actual offense level

4    that this defendant has, it addresses some of those

5    things that Mr. McLarty was presenting before the

6    Court.  You know, had he been in a position where he

7    was producing child pornography of a much younger

8    child under similar circumstances that Mr. McLarty

9    is talking about, his guideline range would be

10   significantly higher than what it is, at least in

11   terms of its offense level.

12           The offense level that he has at this

13   point is offense level 34, which, if he had no

14   criminal history category -- which is frankly

15   generally the kind of defendant we see in these

16   kinds of cases -- his guideline range would actually

17   be below the mandatory minimum.  But, you know, we

18   take into account more than what the offense level

19   is.

20           But even -- but even considering that,

21   when you look at the facts of this case, before we

22   even get to the history and circumstances of this

23   defendant -- and I will get to that in a moment --

24   there is nothing that isn't shocking about this

25   case.  It's different than some of the cases that

23

1    Mr. McLarty wanted to talk about.  But the facts of

2    this case are -- are -- are ugly in the sense that

3    this is a defendant who chose to exploit -- we're

4    talking about a 13-year-old young girl.  She hadn't

5    been 13 years old that long.  I understand that she

6    told him she was 17 years old, and he wants everyone

7    to believe that's what he thought.  But I think some

8    of the facts in the presentence report reflect that

9    there was quite a bit of doubt about this

10   13-year-old girl claiming to be 17 years old, that

11   people didn't believe she was 17 years old.  And he

12   capitalized on her vulnerability by -- I mean, he

13   was only with this girl for three days.  And within

14   hours, he was having sexual intercourse with her;

15   she was being sexually assaulted.

16          Within hours and days he had devised a

17   plan to pimp her out and, in fact, did to one of his

18   friends, had her perform oral sex on one of his

19   friends for $10.  He took that money.  And not only

20   pimping her out, he had sexual explicit photos taken

21   of her.  He took videos, himself, of him engaging in

22   sexual assault with this girl, and he had images

23   that were to be taken for the purpose of advertising

24   her as a prostitute.

25          So this notion -- and I can certainly

1   appreciate and sympathize with his family.  I know

2   this has got to be a very difficult situation.  But

3   I think Quaylan Anderson, and the facts of this case

4   show, is not a person who wants to be helpful, who

5   is a loving person, but this is someone who

6   knowingly chose to exploit a child and to do so in

7   some of the worst ways.

8          And even if we accept that he somehow

9   believes she was 17 years old, which I don't think

10  the facts really demonstrate, after he knew she was

11  13, this was not someone who then called the police

12  or took her back to her foster home or tried to get

13  her help and back into a safe situation.  Instead,

14  what he chose to do was hide her and hide himself.

15         And it was only because the police really

16  acted, fortunately, as they should have that she was

17  recovered.  Because if they hadn't stuck with it and

18  done what they needed to do, perhaps she wouldn't

19  have been recovered at all and this abuse would have

20  simply continued.  So in terms of the actual facts

21  of the case, it's certainly within the heartland,

22  and there is nothing -- there is nothing mitigating

23  about this case whatsoever.

24         And coupling that with the history and

25  characteristics of this defendant, he has earned a

1   heavy guideline range, the guideline range that he

2   faces at this point.  And the Court has -- has, you

3   know, been kind enough to even drop him from a

4   criminal history category VI to a criminal history

5   category V, which gives him some consideration, but

6   still he has a hefty guideline range that he has

7   deserved.

8          When you look at his criminal history, he

9   has been consistently committing crimes, and not

10  just your average crime, but I think in every

11  description of his offenses that I read, there was

12  some form of violence involved.  And sometimes that

13  violence was actually being committed against his

14  own family members.

15         He was given opportunity after opportunity

16  after opportunity to reform, to become a productive

17  citizen, both as a juvenile and then once he reached

18  the age of majority.  And what's clear is, that's

19  simply not the lifestyle that he wants to live.  He

20  chooses not to do that.  He commits crimes while on

21  probation, he committed this crime while he was

22  still under a term of probation.  And I think it

23  simply demonstrates this defendant has no respect

24  for the law, no respect for court rules, and he has

25  victimized people every step of the way, and this

1   time the victimization resulted in the victimization

2   and exploitation of a 13-year-old girl.

3           I would ask the Court to sentence him

4   within the advisory guideline range and to a

5   sentence that is appropriate for -- for this

6   defendant and will show him that it is time that he

7   respect the law and that this is the kind of crime

8   that will be punished severely.

9           THE COURT:  Thank you, Ms. Miller.

10          MS. MILLER:  Thank you.

11          THE COURT:  Mr. McLarty, if you and your

12  client will come back up here.

13          Mr. Anderson, this is a case that I have a

14  little bit more familiarity with than just what I

15  know from the presentence report, because we had a

16  lengthy hearing a while ago with the videotape and

17  the officers -- of the officers' visit to your house

18  and then their ultimate determination that, despite

19  what your grandmother and your brother were telling

20  them, that you were in fact there with the

21  13-year-old in that locked bedroom.

22          So you start off with a high range in the

23  guidelines, and justifiably so, 235 to 293 months,

24  based upon the conduct here.  And that is giving you

25  some leeway with regard to this criminal history,

1  which I said I really am doing just to give you

2  because I think the evidence supported the points.

3  But we're going to start there since it's already so

4  high.

5       So I have to consider the nature and

6  circumstances of the offense, your history and

7  characteristics.  I want the sentence under our laws

8  to promote respect for the law, reflect the

9  seriousness of the offense, and provide just

10  punishment, as well as to deter, to tell others to

11  not engage in this, because the sentences are stiff,

12  and give them that message by this sentence, protect

13  the public.  And all of the factors in that statute

14  the Court is considering in deciding where this

15  sentence should land.

16       When I look at you and your background, I

17  would think it's undeniable that you were dealt a

18  very unfair blow by the way you were raised with

19  your mother being a drug addict.  And thank goodness

20  your grandmother was able to step in, and she seems

21  pretty tough to me from watching her during that

22  last hearing, but not the same.  You started off

23  with a negative there with a mother who was a drug

24  addict, no question about that.

25       But I look at it, and I have had other

1   people with dire circumstances that they were born

2   into, and I haven't seen that that was a justifiable

3   cause for a reoccurrence over many years of violent

4   behavior, even towards your brother.

5          I remember in the videotape in particular

6   your brother, who is I think twice your size, was

7   taking up for you with the two police officers,

8   insisting to two armed police officers that you

9   weren't there and the young lady was not there.  And

10  then, when they finally allowed the police officers

11  in and determined after all of that time and

12  resistance that your grandmother and your brother

13  had given on your behalf that, in fact, it was just

14  a big lie and you, in fact, were in the bedroom and

15  your brother was crying when you came out.  And I

16  look at that as sort of characteristic of what I can

17  see from your criminal history of how you pretty

18  much treated your family, including your brother,

19  who you have had a crime against, assaultive crime

20  against in the past.

21         So despite the poor nature and the unfair

22  nature of how you were brought up, it just doesn't

23  justify the way you have acted.  Nothing supports

24  the violent behavior you have engaged in.

25         And then we get to this particular

1   offense, because all of what I am saying is well

2   documented in the criminal history category, that

3   this -- so there's no fear whatsoever when two armed

4   police officers come to the house looking for the

5   13-year-old.  And then you have all of this defiant

6   type of conduct against law enforcement in your

7   background.  But you have a 13-year-old that I

8   think, by your own admission, you had sex with maybe

9   nine times over that couple of days, and you're

10  taking a picture of her with your video phone while

11  you are engaging in sexual intercourse with her and

12  then either wanting to sell her as a prostitute or

13  at least charge your friend $10, which sounds like

14  you kept, if she would have oral sex with him.

15  That's outrageous.

16          I understand what we are talking about

17  with child pornography.  Mr. McLarty, and I know

18  Ms. Miller, we all agree about the horrific nature

19  of those photographs, but this isn't one of those

20  photograph gathering type of cases.  Maybe the same

21  statute, but we're talking about just a different

22  permutation of that kind of behavior, in my view

23  equally as bad, because it actually involved a live

24  human being that you were victimizing.

25          So I don't see that this is outside of the

```
 1    heartland of what I normally see.  I would be
 2    looking at that more if we had a picture case with
 3    not as many pictures and hadn't been going on for
 4    such a long period of time.
 5            When I look at all of this behavior --
 6    Mr. Anderson, you have been given so many chances.
 7    How in the world you got a deferred adjudication for
 8    aggravated assault after the other two offenses, an
 9    eight-year deferred adjudication is beyond me after
10    the other two crimes, but you did.  But you have
11    been given chance after chance after chance, and you
12    have -- you do have relatives that have been
13    available to take care of you.
14            So I think that in the stream of things,
15    despite the circumstances that you found yourself
16    born into, that there isn't anything else in your
17    favor in this case.  And so when I weigh the pros
18    and cons, it seems to me that to carry out the
19    purposes of our sentencing statute and provide a
20    reasonable sentence, not more than it should be to
21    do that, that a 293 month sentence, which is at the
22    high end of the guideline range as reduced by the
23    Court, is the appropriate sentence to send a message
24    and to promote respect for the law and to account
25    for the behavior in this case and your background.
```

1          So the sentence is 293 months in custody.

2   Is there a mandatory term of supervised release

3   here?

4          MS. MILLER:  It should be five years, Your

5   Honor, mandatory minimum term of supervised release.

6          THE COURT:  Five-year term of supervised

7   release, no fine, no restitution; a 100-dollar

8   mandatory special assessment is also ordered.

9   Again, a five-year term of supervised release.  And

10  I'm going to -- I don't think I have a copy of them

11  out here because they are somewhat complicated.  I

12  will get a copy out to Mr. Anderson, you and your

13  counsel, so you can review them on a break and make

14  sure that you understand them and agree to be bound

15  by them.  So we will take a short break until I can

16  get you a copy of those, and then we will finish the

17  sentencing.

18          (Recess taken.)

19          THE COURT:  Mr. McLarty, if you and your

20  client will come back up, please.

21          Mr. Anderson, have you had a chance to

22  review the terms of your supervised release?

23          THE DEFENDANT:  Yeah.

24          THE COURT:  Do you understand and agree to

25  be bound by them?

1            THE DEFENDANT:  I understand.

2            THE COURT:  Mr. Anderson, I expect some

3    respect out of you.  You are in a court of law, and

4    I want to hear from you, "Yes, Your Honor" or "No,

5    Your Honor."  Have you read the terms of supervised

6    release?

7            THE DEFENDANT:  Yes.

8            THE COURT:  Yes, what?

9            THE DEFENDANT:  Yes, ma'am.

10           THE COURT:  Do you understand them and

11   agree to be bound by them?

12           THE DEFENDANT:  Yes, ma'am.

13           THE COURT:  All right.  You signed the

14   last page here?  Did you sign the last page?

15           THE DEFENDANT:  Yes, ma'am.

16           THE COURT:  All right.  Mr. Anderson, you

17   have a right to appeal this sentence.  You have

18   waived part of your right to appeal.

19           Do you need to take a break so you can

20   calm down?

21           THE DEFENDANT:  No.  It's going to be

22   appealed.  I want to go back though.

23           MR. McLARTY:  Calm down.  Just hang in

24   there and listen to her questions and answer.  You

25   can't go back.  You don't want these Marshals

1    jumping you.  Got it?

2              We're ready, Your Honor.

3              THE COURT:  Mr. Anderson, you have a right

4    to appeal this sentence within the areas that you

5    reserved in your appeal waiver.  Mr. McLarty can

6    talk about those with you.  You waived a portion of

7    your right to appeal, but you still have some

8    rights.  If you decide to appeal, you are entitled

9    to court-appointed counsel to represent you at the

10   appeal.  The notice of appeal has to be filed within

11   14 days of the date of the Court's judgment.

12             Mr. McLarty, if you will do the honors on

13   that, I would appreciate that.

14             MR. McLARTY:  I will do that, Your Honor.

15             THE COURT:  Is there anything else, any

16   requests?

17             MR. McLARTY:  Your Honor, we would request

18   a recommendation to Seagoville or a facility as near

19   as possible to Dallas/Fort Worth.

20             THE COURT:  I will so recommend.

21             Anything from the government?

22             MS. MILLER:  The government is moving to

23   dismiss Count 2 pursuant to the plea agreement in

24   this case.

25             THE COURT:  Count 2 is dismissed as will

1    be reflected in the minutes of this hearing.

2                 MR. McLARTY:  One other matter, Your

3    Honor.

4                 THE COURT:  Yes.

5                 MR. McLARTY:  The Court, I'm sure, will

6    recall the issue -- we had the issue arising during

7    the hearing about, I guess it was the potential

8    issues on the credibility of the witness.  There was

9    an ex parte submission to the Court.

10                THE COURT:  I'm not sure what you're

11   asking me.  Go ahead and ask me the question.

12                MR. McLARTY:  Basically what I would ask

13   is if the Court would -- if there is any update on

14   that information, any new information affecting the

15   credibility of the witness, anything that's

16   transpired since our motion to suppress hearing that

17   would be pertinent and relevant to the issues

18   presented to you in your ex parte conference with

19   the government, that if there is any update, that

20   that be provided to the Court so that it can be made

21   part of the appellate record.

22                THE COURT:  Your motion is granted.  All

23   right.

24                MR. McLARTY:  Okay.

25                THE COURT:  All right.  If there is

```
1    nothing else, then, Mr. Anderson is remanded to

2    custody, and we will be in recess.

3                (Court in recess at 2:42 p.m.)
```

**SHAWNIE ARCHULETA, CSR/CRR**
**FEDERAL COURT REPORTER – 214.753.2747**

```
1                    C E R T I F I C A T E

2         I, Shawnie Archuleta, CCR/CRR, certify

3    that the foregoing is a transcript from the record

4    of the proceedings in the foregoing entitled matter.

5         I further certify that the transcript fees

6    format comply with those prescribed by the Court and

7    the Judicial Conference of the United States.

8         This 18th day of September 2013.

9

10

11                      s/Shawnie Archuleta
                        Shawnie Archuleta CCR No. 7533
12                      Official Court Reporter
                        The Northern District of Texas
13                      Dallas Division

14

15

16   My CSR license expires:  December 31, 2013

17   Business address:  1100 Commerce Street
                        Dallas, TX  75242
18   Telephone Number:  214.753.2747

19

20

21

22

23

24

25
```